1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

JOHN WALTER KRUEGER,                    1:11-CV-00097 AWI BAM HC

            Petitioner,             FINDINGS AND RECOMMENDATION
                                    REGARDING PETITION FOR WRIT OF
      v.                            HABEAS CORPUS

MATTHEW CATE,

            Respondent.
_____/

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

      Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on November 29, 2006, of five counts of lewd and lascivious conduct with three young boys, in violation of Cal. Penal Code § 288(a).  (See Petition at 2; Resp't's Answer, Ex. A.)  Petitioner was sentenced to serve five consecutive indeterminate terms of fifteen years to life in prison.  (See Resp't's Answer, Ex. A.)

      Petitioner appealed.  On August 13, 2009, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned decision.  (See Resp't's Answer, Ex. A.)  Petitioner then filed a petition for review in the California Supreme Court.  (See

1

Lodged Doc. No. 10.)  The petition was summarily denied on October 22, 2009.  (See Lodged Doc. No. 11.)

On January 20, 2011, Petitioner filed the instant federal habeas petition.  Respondent moved to dismiss the petition for failure to exhaust state remedies, and Petitioner responded by moving for stay of the petition.  On June 3, 2011, the undersigned stayed the petition and held it in abeyance pending exhaustion of state remedies.  Petitioner proceeded to file a petition for writ of habeas corpus in the California Supreme Court on July 1, 2011.  (See Lodged Doc. No. 10.)  The petition was denied on November 16, 2011, with citation to In re Robbins, 18 Cal.4th 770, 780 (1998), In re Waltreus, 62 Cal.2d 218, 225 (1965), In re Dixon, 41 Cal.2d 756, 759 (1953), In re Swain, 34 Cal.2d 300, 304 (1949), and In re Lindley, 29 Cal.2d 709, 723 (1947). (See Lodged Doc. No. 11.)  Petitioner then returned to federal court and the Court lifted the stay.  On January 5, 2012, Respondent filed an answer to the petition.  On April 3, 2012, Petitioner filed a traverse.

## STATEMENT OF FACTS[1]

We present the relevant facts through the witnesses in the order the jury received the evidence. We do this to ease the analysis of the contentions raised by [Petitioner].

*S.'s Testimony*

S. was age 12 at the time of trial. He was friends with [Petitioner]'s three sons, W., T., and C. All four boys were born in the Ukraine and brought to the United States after they were adopted.

S.'s mother, Sharon, would take S. to visit [Petitioner] and his sons in Bakersfield. During these visits, S. and his mother would stay at the hotel owned by [Petitioner]. On these visits, S. slept on W.'s bed, which was located in [Petitioner]'s bedroom. Sharon would sleep in a separate hotel room.

Sometimes, when everyone was in bed, [Petitioner] would ask S. to come to his bed. When S. got into [Petitioner]'s bed, [Petitioner] would touch S.'s penis and take S.'s hand and place it on his ([Petitioner]'s) penis. The two would rub each other's penises. [Petitioner] would have an erection when S. touched his penis. These encounters occurred approximately five to six times in Bakersfield.

S. also heard [Petitioner] call C. to his bed. S. could see what [Petitioner] was doing to C. when W. got out of bed to get a drink of water. It appeared [Petitioner] was

---

[1]The Fifth DCA's summary of the facts in its August 13, 2009, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to overcome the presumption. 28 U.S.C. § 2254(e)(1).  Accordingly, the Court adopts the summary of facts.

"humping" C. or poking his penis into C.'s buttocks. S. did not see C. touch [Petitioner]'s penis, but he did see [Petitioner] touch C.'s penis.

S. also heard [Petitioner] call W. and T. to his bed, and he saw [Petitioner] do the same things with them that he had done with C. He saw this activity the five or six times he stayed at [Petitioner]'s house.

On one occasion S. and his mother went on a snow-skiing trip with [Petitioner] and his sons. [Petitioner] and all four boys slept in [Petitioner]'s motorhome while S.'s mother stayed in a cabin. [Petitioner] asked S. to join him in his bed in the motorhome. When S. got into [Petitioner]'s bed, [Petitioner] again fondled him as described before.

On another occasion S. and his mother went on a vacation to San Diego with [Petitioner] and his sons. S. ended up in [Petitioner]'s bed and endured the same type of inappropriate activity.

On cross-examination, S. confirmed that T. and C. had not slept in [Petitioner]'s room, so they could not see what occurred in [Petitioner]'s room from their bedroom. S. had stayed with [Petitioner] three or four times before the first molestation occurred, making S. 10 years of age when the molestations began.

On the way home from San Diego, S. told his mother that he was uncomfortable around [Petitioner]. About a week later, S. told his mother that [Petitioner] had molested him, W., C., and T. About 10 months later, S. and his mother reported the molestations to the police.

When S. first reported the molestations, he told the officers that he and the three boys all slept in the second bedroom, so he could not see what occurred in [Petitioner]'s bedroom. When S. was interviewed a second time, he stated the only other boy he saw [Petitioner] molest was W.

With the help of his mother, S. later remembered he had seen [Petitioner] also molest C. and T. S.'s mother helped him remember things about the molestations about five times, with each session lasting one hour. Sometimes S.'s mother would ask him questions, and sometimes she would suggest things to S. that would help him remember things. She did not tell S. what to say. S.'s mother first helped him remember things before his first police interview. That session lasted one and one-half hours. After that session, S. and his mother went to see the police.

*Sharon's Testimony*

S.'s mother, Sharon, testified that she adopted S. on July 29, 2002. Sharon had S. examined, and she learned that he has difficulty processing things told to him orally. He does much better if he can see pictures.

Sharon knows the [Petitioner] boys and [Petitioner]. They met in January 2003. [Petitioner] learned that Sharon had adopted S. and wanted to introduce his boys to S. The boys instantly became friends.

The first time Sharon and S. traveled to Bakersfield was for a reunion for families that had adopted children from the Ukraine. [Petitioner] hosted the event. Sharon and S. stayed at [Petitioner]'s hotel. S. slept in Sharon's room the first night and may have slept with the boys the second night.

Sharon and S. returned approximately six times to Bakersfield for visits. On most

occasions, S. slept with the [Petitioner] boys. In addition, Sharon and S. took three trips with [Petitioner] and the boys-a cruise to Mexico, a snow-skiing trip, and a trip to San Diego. When snow skiing, Sharon stayed in the lodge while [Petitioner] and the boys stayed in [Petitioner]'s motorhome.

The group went to San Diego over the Presidents' Day weekend in 2005. [Petitioner] arranged for two hotel rooms. The boys were split up between the two rooms, with an adult in each room. [Petitioner] was irritable on that trip, which made Sharon uncomfortable. On the way home, Sharon asked S. if [Petitioner] made him uncomfortable. S. answered yes. Sharon then asked S. when [Petitioner] made him uncomfortable. S. replied that he was uncomfortable when [Petitioner] called him to his bed. S. said that [Petitioner] rubbed his body because S. was cold, and that [Petitioner] touched his bottom while doing this, but did not mention any other types of bad touches. Sharon asked [Petitioner] about bringing S. to his bed. [Petitioner] admitted doing so, but denied molesting S.

In December 2005, [Petitioner] posted a notice on a group Web site that stated he was hosting a boy from the Ukraine who was available for adoption. S. said he wanted to go meet the new boy and see the [Petitioner] boys. Sharon said she needed to know what happened when S. got into bed with [Petitioner]. S. stated that [Petitioner] "humped" [FN2] him. S. admitted that [Petitioner] touched his penis and forced S. to touch his ([Petitioner]'s) penis. S. also said that he saw [Petitioner] do the same things with W., C., and T. Sharon admitted asking S. some questions, but denied helping S. remember what had occurred. Sharon also stated this occurred on only one occasion.

FN2. This was the term S. used for the molestation previously described.

*Kathleen Neuman's Testimony*

Kathleen Neuman, a social worker with Kern County, supervised two visits [Petitioner] had with his adopted sons. On January 11, 2006, Neuman heard [Petitioner] ask C. how long he had been in the orphanage and whether he wanted to go back to the orphanage. C. also kissed T. on the lips and grabbed him by the shoulders and started gyrating while saying to T., "Let's dance."

During the January 18, 2006 visit, C. and T. placed their jackets over the observation window through which Neuman was watching so she could not see into the room. [Petitioner] was sitting on the couch with W. and was whispering something to him. Neuman also observed C. try to kiss T. on the lips and heard [Petitioner] comment that C. was a "pretty little boy."

*W.'s Testimony*

W. was 12 years old when he testified. He was born in the Ukraine to a family of about 15 children. T. is W.'s biological brother and is two years younger than W.T. and W. went to live in an orphanage when W. was about seven. T. and W. were adopted by [Petitioner] about three months before W. was to turn eight. C. was adopted about a year later.

W. stated that [Petitioner] touched his private areas only to check to see if they were clean. Before C. was adopted, T. and W. shared a room and [Petitioner] slept in another room. After C. was adopted, [Petitioner] had a door installed between the two rooms. T. and C. slept in one room and W. and [Petitioner] slept in another room in separate beds. W. would get into [Petitioner]'s bed for about 30 minutes at night about once a week or so. W. did not remember why he did so, but when he got into

4

[Petitioner]'s bed he would just sleep.

[Petitioner] never touched W.'s penis or buttocks. Nor did W. see [Petitioner] touch T.'s or C.'s private areas. On one occasion C. got punished for touching T.'s privates, even though they were playing around.

*T.'s Testimony*

T. was nine when he testified. He stated that no one had ever touched his penis or buttocks. He admitted that [Petitioner] touched his penis to make sure it was clean. T. admitted that on one occasion he told Donna Hansen, a licensed marriage/family therapist, that he was touched on his private area, but he meant to say that [Petitioner] did not touch him. T. also admitted in a prior hearing that he testified that [Petitioner] never touched his penis, and he never saw [Petitioner] touch anyone else's penis.

*C.'s Testimony*

C. was nine when he testified. He stated that no one had touched his penis or his buttocks. He did not remember telling Detective William Darbee that [Petitioner] had touched his penis. He remembered telling Darbee that when [Petitioner] touched him, it made him feel weird, and that the touching occurred in [Petitioner]'s bed. C. also told Darbee he was touched on the outside of his clothes.

*Hansen's Testimony*

T. is one of Hansen's clients. During a counseling session, T. said that [Petitioner] had touched him inappropriately. The session began with T. drawing three pictures. Hansen asked T. to draw a picture of the person who had touched him. T. drew a picture of two people, one individual larger than the other. He identified the larger individual as [Petitioner] and the smaller individual as himself. T. said [Petitioner] had touched his penis. The picture T. drew showed [Petitioner]'s hand cut off.

Hansen admitted on cross-examination that T. was asked approximately five times if he had been touched inappropriately before he stated he had. She also admitted that a child could be manipulated into making an admission of abuse if the question were asked repeatedly. She admitted that T. repeatedly had denied being touched by anyone, stated he missed his father, and stated he did not understand why he could not go home. Hansen did not feel she had badgered T. into accusing [Petitioner] of molesting him.

*Darbee's Testimony*

Darbee was assigned to the juvenile/sex crimes division of the Bakersfield Police Department. He went to [Petitioner]'s hotel to interview him in December 2005. When he arrived, all the boys were dressed in their underwear, as was [Petitioner]. While waiting for [Petitioner], Darbee saw C. put his hand inside another boy's briefs, apparently touching his penis.

Darby interviewed C. on two occasions. The first was late the night he first appeared at the hotel. A video recording of the interview was introduced into evidence and played for the jury.

C. was interviewed a second time a few days later. Darbee observed the beginning of the interview and conducted the latter part of the interview. A video recording of this interview also was played for the jury. In the interview, C. admitted he had been touched inappropriately by [Petitioner] and claimed he had been molested approximately 10 times.

*C.C.'s Testimony*

C.C. was age 27 at the time of trial. He was born in Cambodia and moved to Bakersfield in 1986. He met [Petitioner] through their church. C.C. began spending time with [Petitioner]. [Petitioner] molested C.C. for the first time when C.C. spent the night at [Petitioner]'s motel. [Petitioner] fondled and masturbated C.C. At the time C.C. was approximately seven years old. [Petitioner] molested C.C. approximately one to three times in a two-year period. When C.C. was 16, he told his family and the church what had occurred. The church investigated but nothing came out of the investigation.

*S.R.'s Testimony*

S.R. was age 32 at the time of trial. S.R. was eight years old when he met [Petitioner]. After S.R. and his mother grew to trust [Petitioner], S.R. would spend the night at [Petitioner]'s house. Eventually, S.R. ended up sleeping in [Petitioner]'s bed. [Petitioner] began by asking S.R. to sleep in his bed so he could read him a story. After about the third time S.R. had slept with [Petitioner], [Petitioner] asked S.R. to do inappropriate things. [Petitioner] liked to masturbate while touching S.R.'s penis. [Petitioner] molested S.R. approximately 15 times, beginning when S.R. was eight and ending when S.R. was 11 or 12.

*Defense Evidence*

[Petitioner]'s defense consisted of several character witnesses, including his stepson, and a psychiatrist who suggested the techniques used in investigating this case could have led to false accusations. The character witnesses all testified that they did not believe [Petitioner] had molested anyone. [Petitioner]'s stepson testified that [Petitioner] was a good father, he had not been molested by [Petitioner], and he did not believe [Petitioner] would molest any child.[FN3]

FN3. Our brief summary of the defense evidence does not mean we give it little weight. We summarized it so because it was the jury's function to determine the weight to be assigned the testimony.

(See Resp't's Answer, Ex. A.)

**DISCUSSION**

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769

(5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521

U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

        Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is

barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624

(2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

        As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words,

'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition,

the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in

. . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of

review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van

Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an

end and the Court must defer to the state court's decision. <u>Carey</u>, 549 U.S. 70; <u>Wright</u>, 552 U.S. at 126; <u>Moses</u>, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405, *quoting* Webster's Third New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Id</u>. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Harrington</u>, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. <u>Id</u>. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious

1    effect on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

2       Petitioner has the burden of establishing that the decision of the state court is contrary to

3    or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

4    Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

5    states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

6    state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th

7    Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

8       AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1)

9    is limited to the record that was before the state court that adjudicated the claim on the merits,"

10   and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v.

11   Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state

12   courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v.

13   Cockrell, 537 U.S. 322, 340 (2003), citing 28 U.S.C. § 2254(e)(1).  However, a state court

14   factual finding is not entitled to deference if the relevant state court record is unavailable for the

15   federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v.

16   Tamayo-Reyes, 504 U.S. 1 (1992).

17   III.    Review of Claims

18          A. Sentencing Issues

19       In his first claim for relief, Petitioner raises several contentions regarding his sentence. He

20   alleges the trial court sentenced him to a term of 75 years to life when the statutory maximum for

21   the offenses was 18 years.  He also claims the trial court erred in sentencing him to separate

22   sentences on counts 1, 2, and 3, because the jury may have convicted him for each count based

23   on the same act.  Finally, he alleges the trial court erred because it believed it did not have

24   discretion to impose concurrent sentences.

25       This claim was presented on direct appeal to the Fifth DCA.  (See Resp't's Answer, Ex.

26   A.)  The Fifth DCA analyzed and rejected the claim as follows:

27          *A. Statutory Penalty*

28              [Petitioner] claims the maximum sentence to which he was exposed was only 24

9

years, [FN9] instead of the 75-years-to-life term that was imposed by the trial court. The argument appears to be based on a typographical error in the jury form.

> FN9. [Petitioner] argues that his maximum sentence was eight years for counts 1, 2 and 3, and eight years each for counts 4 and 6.

The first amended information charged [Petitioner] with six counts of violating section 288, subdivision (a). Each count also charged as an enhancement that [Petitioner] committed the crimes against more than one victim pursuant to the provisions of section 667.61.[FN10]

> FN10. The enhancement reads in full: "IT IS FURTHER ALLEGED THAT JOHN WALTER KRUEGER, IN THE COMMISSION OF THE ABOVE CHARGED OFFENSE HAS COMMITTED AN OFFENSE IN VIOLATION OF SUBDIVISION 667.61(C), AGAINST MORE THAN ONE VICTIM, WITHIN THE MEANING OF PENAL CODE SECTION 667.61(E)(5)."

Section 667.61 provides for an increased sentence for certain specified crimes under certain specified circumstances. The crimes specified in section 667.61 include violations of section 288, subdivision (a). (§ 667.61, subd. (c)(8).) One of the circumstances specified in 667.61 is if the defendant is convicted in the action of committing one of the specified crimes against more than one victim. (§ 667.61, subd. (e)(5).) Therefore, the People alleged that [Petitioner] committed a crime included in section 667.61, subdivision (c) and a circumstance specified in section 667.61, subdivision (e) applied to the case. This allegation, if found true, exposed [Petitioner] to a term of 15 years to life on each count pursuant to the provisions of section 667.61, subdivision (b).

The verdict form erroneously stated: "We, the Jury, empaneled to try the above entitled cause, find it to be true that JOHN WALTER KRUEGER, in the commission of the above charged offense has committed an offense in violation of subdivision *661.61(c),* against more than one victim, within the meaning of Penal Code Section 667.61(e)(5), as alleged in the Information." [FN11] (Italics added.) According to [Petitioner], the reference to section *661.61,* subdivision (c) instead of section 667.61, subdivision (c), invalidated the enhancement finding. If [Petitioner] is correct, his sentence would be limited to the term specified in the statute, or a maximum of eight years for each count. (§ 288, subd. (a).)

> FN11. The enhancement found true for each count contained the same typographical error.

The section 667.61, subdivision (b) enhancement applies if the jury finds that (1) the defendant committed a crime specified in section 667.61, subdivision (c), under one of the circumstances specified in section 667.61, subdivision (e). The jury made the requisite findings. It found [Petitioner] guilty of violating section 288, subdivision (a) (five counts), and found there was more than one victim in the case. (§ 667.61, subds.(c)(8), (e)(5).) These two findings required the trial court to impose a sentence of 15 years to life on each count pursuant to the terms of section 667.61, subdivision (b). The verdict form's reference to section 661.61, instead of section 667.61 is irrelevant.

*B. Counts 1 through 3*

[Petitioner] argues the trial court erred in sentencing him to a separate sentence for counts 1, 2, and 3 because the information and the verdict form for each count were identical. In essence, [Petitioner] is arguing that the jury may have convicted him for each

10

count based on the same act.

The evidence at trial was sufficient to support the three counts of molestation. S. testified he was molested by [Petitioner] "[p]robably five or six times" in Bakersfield, and he identified at least two additional locations where he was molested-during the snow-skiing trip and the trip to San Diego.

"'In a criminal case, a jury verdict must be unanimous. [Citation.] ... Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." [Citation.]'" (*People v. Norman* (2007) 157 Cal.App.4th 460, 464-465.)

The prosecutor did not elect a specific incident to support the three counts involving S. The trial court, however, instructed the jury with the unanimity instruction as follows: "The defendant is accused of having committed the crime of Penal Code section 288(a). The prosecution has introduced evidence for the purpose of showing that there is more than one act upon which a conviction for each count may be based. [¶] The defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of the acts; however, in order to return a verdict of guilty as to any count, all jurors must agree that he committed the same act or acts. [¶] It is not necessary that the particular act agreed upon be stated in your verdict. [¶] In addition, you may not use the same act to find the defendant guilty of more than one count."

[Petitioner] ignores this instruction in his argument. We, on the other hand, presume the jury followed the instruction (*People v. Alfaro, supra,* 41 Cal.4th at p. 1326) and based the guilty verdict in each count on a separate act. Accordingly, we reject [Petitioner]'s argument.

*C. Discretion of the Court*

Finally, [Petitioner] argues the trial court erred because it believed it was required to impose consecutive sentences on each count. This argument arises from the proceedings at the sentencing hearing.

The trial court initially stated that it was not certain if consecutive sentences were required. The prosecutor then argued for a different sentencing scheme altogether, based on his mistaken recollection of a particular case. The trial court recessed for lunch to allow time for some additional research on the topic. After the recess, the prosecutor corrected himself and confirmed that [Petitioner] was eligible for a 15-year-to-life sentence on each count, and that the trial court had discretion to impose the sentences either consecutively or concurrently. The probation officer agreed with the prosecution's assessment and specifically stated the trial court had discretion to impose the sentences either consecutively or concurrently. [Petitioner]'s counsel thereafter argued that case law permitted imposition of concurrent sentences, and he urged the trial court to impose concurrent sentences. As stated above, the trial court imposed consecutive sentences.

It is clear from the record that the trial court understood it had discretion to impose either concurrent or consecutive sentences. To the extent [Petitioner] is arguing otherwise, we reject the argument. We do not understand [Petitioner]'s brief to suggest the trial court abused its discretion in imposing consecutive sentences, and therefore do not address that issue.

1  (See Resp't's Answer, Ex. A.)

2      1.  Procedural Default

3      Petitioner did not present the claim to the California Supreme Court in his petition for

4  review on direct appeal.  Rather, he presented them later in a petition for writ of habeas corpus.

5  (See Lodged Doc. No. 10.)  The California Supreme Court rejected the claim on procedural

6  grounds with citation to In re Robbins, 18 Cal.4th 770, 780 (1998), In re Waltreus, 62 Cal.2d

7  218, 225 (1965), In re Dixon, 41 Cal.2d 756, 759 (1953), In re Swain, 34 Cal.2d 300, 304 (1949),

8  and In re Lindley, 29 Cal.2d 709, 723 (1947). (See Lodged Doc. No. 11.)  With very little in the

9  way of analysis, Respondent urges the Court to reject the claim as procedurally barred.

10     A federal court will not review a petitioner's claims if the state court has denied relief of

11 those claims pursuant to a state law that is independent of federal law and adequate to support the

12 judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,

13 729-30 (1989).  This doctrine of procedural default is based on the concerns of comity and

14 federalism. Coleman, 501 U.S. at 730-32.  However, the Ninth Circuit has noted that ambiguities

15 arise when a state court imposes multiple procedural bars to multiple claims without specifying

16 which bars apply to which claims.  See, e.g., Koerner v. Grigas, 328 F.3d 1039, 1051 (9th

17 Cir.2003); Valerio v. Crawford, 306 F.3d 742, 775 (9th Cir.2002) (en banc).

18     In this case, the California Supreme Court rejected the habeas petition on multiple

19 procedural grounds.  In citing to Robbins and Swain, the California Supreme Court determined

20 that some or all claims were untimely.  See In re Robbins, 18 Cal.4th at 814 ("to avoid the bar of

21 untimeliness with respect to each claim, the petitioner has the burden of establishing (i) absence

22 of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception

23 to the bar of untimeliness"); In re Swain, 34 Cal.2d at 304 ("a convicted defendant [must] . . .

24 fully disclose his reasons for delaying . . . .").  The California Supreme Court's citation to In re

25 Waltreus in this case indicated that, with respect to some or all claims, Petitioner had failed to

26 abide by time limitations set forth in California Rules of Court § 8.500(e) (formerly § 28(b)) in

27 presenting his claims by petition for review.  Forrest v. Vasquez, 75 F.3d 562, 563-64 (9th Cir.

28 1996).  The California Supreme Court also cited In re Dixon, 41 Cal.2d 756 (1953), for

1  California's procedural rule that "prohibits [a petitioner from] raising an issue in a postappeal

2  habeas corpus petition when that issue was not, but could have been, raised on appeal." In re

3  Harris, 21 Cal.Rptr.2d at 395, n. 3 (1993), citing In re Dixon, 41 Cal.2d 756.  Finally, the

4  California Supreme Court cited to In re Lindley, 29 Cal.3d 709 (1947).  A citation to In re

5  Lindley stands for the proposition that habeas corpus is not the proper method to retry issues of

6  fact or the merits of a defense, or to challenge the sufficiency of the evidence, and such issues

7  must be brought on appeal. Id. at 723.

8        In this case, it cannot be determined which procedural bars were imposed on which

9  claims, with the exception of the Lindley bar which clearly applies to claims of insufficiency of

10  the evidence.  Certain procedural bars noted above have been determined to rely exclusively on

11  independent and adequate state grounds so as to bar federal review.  See, e.g., Forrest v. Vasquez,

12  75 F.3d at 563-64 (Waltreus bar); Carter v. Giurbino, 385 F.3d 1194, 1197 (9th Cir.2004)

13  (Lindley bar).  Certain other procedural bars have not been determined to be independent and

14  adequate.  In Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), the Ninth Circuit determined

15  that the Robbins bar was independent of federal law.  However, the Ninth Circuit could not

16  resolve whether the bar was an adequate state ground.  It held that because procedural default is

17  an affirmative defense, the burden of demonstrating the adequacy of a state procedural rule fell

18  on Respondent.  Id. at 585, citing Gray v. Netherland, 518 U.S. 152, 165, 116 S.Ct. 2074, 2083

19  (1996).  Likewise, the Ninth Circuit has not resolved whether the Dixon default is an adequate

20  state ground.  Bennett, 322 F.3d 573.

21        In this case, Respondent's assertion of procedural default is cursory, and there is

22  absolutely is no showing of adequacy with respect to Robbins or Dixon.  Therefore, he fails to

23  meet his burden of proving the affirmative defense as to claims barred by Robbins and Dixon.

24  Consequently, while some of Petitioner's grounds might be barred due to the Waltreus and

25  Lindley bars, some are not be barred as to Robbins and Dixon.  Aside from the Lindley bar, it

26  cannot be determined which bars apply to which grounds for relief.  Given this ambiguity, the

27  federal court is not precluded from reviewing the merits of the claims.  In addition, because the

28  California Supreme Court "failed 'to specify which claims were barred for which reasons,'" it

1   "'did not clearly and expressly rely on an independent and adequate state ground.'" <u>Valerio v.</u>

2   <u>Crawford</u>, 306 F.3d 742, 775, *quoting* <u>Coleman</u>, 501 U.S. at 735.

3       2.  Analysis of Claim

4       Petitioner first claims the verdict form was defective thereby rendering the sentence

5   enhancement null and void.  The claim is without merit.  As discussed by the state court, the

6   verdict form contained a typographical error.  The verdict form erroneously contained a reference

7   to "subdivision 661.61(c)" when the form should have read "subdivision 667.61(c)."  (<u>See</u>

8   Lodged Doc. No. 11.)  Regardless of the typographical error, the jury found both facts necessary

9   to impose the enhancement.  The jury determined that Petitioner was guilty of Cal. Penal Code

10  § 288(a), and it determined that there was more than one victim in the case pursuant to Cal. Penal

11  Code § 667.61(c)(8), (e)(5).  The state court was thus required to impose the enhancement on

12  each count.  The state court reasonably determined that the typographical error was irrelevant.

13  The state court's conclusion did not violate the requirement "of trying to a jury all facts necessary

14  to constitute a statutory offense, and proving those facts beyond a reasonable doubt." <u>Apprendi v.</u>

15  <u>New Jersey</u>, 530 U.S. 466, 483-84 (2000).

16      Next, Petitioner claims the trial court erred in sentencing him to separate sentences for

17  counts 1, 2, and 3, because the verdict form and information for each count was identical.  He

18  claims this may have allowed the jury to convict him for all three counts based on the same act.

19  As pointed out by the appellate court, this claim is completely baseless.  The jury was instructed

20  that as to any count, it must agree Petitioner committed the same specific act, and the jury was

21  instructed it could not use the same act to find him guilty of more than one count.  "A jury is

22  presumed to follow its instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).

23      Last, Petitioner claims the trial court erred in sentencing because it believed it was

24  required to impose consecutive sentences for each count.  Again, the claim is without any merit.

25  As discussed by the appellate court, following a recess the prosecutor, probation officer and

26  defense counsel all agreed that the trial court had discretion to impose concurrent or consecutive

27  sentences.  In fact, the court heard argument from defense counsel urging the court to impose

28  concurrent sentences.  There is no question the trial court was aware of its discretion.

In sum, the state court rejection of Petitioner's claim was not contrary to, or an

unreasonable application of, clearly established Supreme Court precedent, or an unreasonable

determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d). The claim should be

denied.

B. Insufficient Evidence

In his second claim for relief, Petitioner contends the evidence was insufficient to support

the verdict on count 4.  This claim was presented on direct appeal to the Fifth DCA.  (See

Resp't's Answer, Ex. A.)  The Fifth DCA analyzed and rejected the claim as follows:

> We begin by addressing two claims that the verdicts were not supported by
> sufficient evidence. Our review of the sufficiency of the evidence is deferential. We
> "'review the whole record in the light most favorable to the judgment below to determine
> whether it discloses substantial evidence-that is, evidence which is reasonable, credible,
> and of solid value-such that a reasonable trier of fact could find the defendant guilty
> beyond a reasonable doubt.' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496;
> *People v. Superior Court (Jones* )(1998) 18 Cal.4th 667, 681.) We focus on the whole
> record, not isolated bits of evidence. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203.)
> We presume the existence of every fact the trier of fact reasonably could deduce from the
> evidence that supports the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We
> will not substitute our evaluations of a witness's credibility for that of the trier of fact.
> (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.)
>
> The jury found [Petitioner] guilty of committing lewd and lascivious acts against
> T., in violation of section 288, subdivision (a) as alleged in count 4 of the information.
> [Petitioner] alleges the judgment was not supported by substantial evidence. [Petitioner]'s
> argument attempts to discredit the testimony supporting the judgment, while emphasizing
> the testimony that supports his argument. Our task is just the opposite.
>
> Hansen testified that T. told her during a counseling session that [Petitioner] had
> touched his penis, and that T. drew pictures to explain what he was telling her. Hansen
> testified the pictures were consistent with T.'s statements. S. testified that he heard
> [Petitioner] call T. to his bed and observed [Petitioner] rubbing his penis against T. and
> observed [Petitioner] touch T.'s penis.
>
> [Petitioner] argues that this evidence was, in essence, unbelievable. He begins by
> attacking S.'s credibility. [Petitioner] asserts that S. admitted he lied about seeing
> [Petitioner] molest T. The record is not so clear. There certainly were some
> inconsistencies in S.'s testimony. He was interviewed at least twice. During cross-
> examination, [Petitioner]'s counsel established that during one interview S. stated he and
> the three [Petitioner] boys would sleep in one bedroom and [Petitioner] would sleep in
> the other bedroom. S. stated that he could see from this bedroom into the other bedroom.
> At trial, it was established that this was impossible because of the location of the
> bedroom doors. Under questioning, S. admitted that it was not true that he could see
> [Petitioner] molesting the [Petitioner] boys from the boys' bedroom.
>
> This admission by S., however, was not a statement that [Petitioner] did not
> molest T.S. testified at trial that he slept with W. in a bed that was located in [Petitioner]'s
> room, and from this bed he could see the other boys being molested by [Petitioner].

While the admission by S., and other inconsistencies in his statements to the police, certainly raised issues about his credibility, it was for the jury to resolve the credibility issues. On review, *we will not substitute our evaluation of a witness's credibility for that of the trier of fact. (People v. Koontz, supra,* 27 Cal.4th at p. 1078.) In other words, we are bound by the credibility determinations of the trier of fact. The jury in this case obviously determined S.'s testimony was worthy of belief. There was substantial evidence in the record to support this determination.

We reach the same conclusion when analyzing [Petitioner]'s other credibility arguments. He again attacks S.'s credibility because S. testified that his mother helped him remember events. According to S., his mother asked him questions that helped him remember more about the molestations. S. testified there were five or six such sessions, each lasting between 60 and 90 minutes. Sharon, S.'s mother, testified that these sessions did not occur as described by S. Once again, this testimony raises issues about S.'s credibility, but those issues were for the jury to consider, not this court.

[Petitioner] also attacks Hansen's credibility. He claims that Hansen rewarded T. when he admitted [Petitioner] molested him. According to [Petitioner], Hansen assumes all of her patients have been molested and feels it is her job to get them to admit they were molested. Once again, the testimony is not quite so clear.

[Petitioner]'s counsel's first question to Hansen on cross-examination was whether she assumed a child who was referred to her for suspected abuse was abused. Hansen stated that she tried to keep an open mind. When counsel asked if there could be false accusations of abuse, Hansen stated that she would not lead a child to say something that did not happen. On the third try counsel stated, "But the point is that you assume it happened, do you not?" Hansen replied, "Yeah. I guess I would."

During direct examination, the People established that T. admitted he had been molested in September 2006, but he did not want to talk about the molestation. At the next session, T. again stated he did not want to talk about the molestation. During the following session, T. was very quiet. Hansen asked him if he wanted to draw. T. drew some pictures, and Hansen then asked him what was going on in the pictures. Hansen then gave him another piece of paper on which to draw and asked him to draw a picture of the person who had "touched him." After he drew a picture of two figures, one larger than the other, Hansen asked some questions about it. T. said that the larger person was touching his penis. He identified the larger person as "Papa."

There was no testimony that Hansen attempted to get T. to identify [Petitioner] as the one who had molested him. Instead, Hansen merely followed up on T.'s statement that he had been abused by getting him to discuss the incident. There was no evidence that Hansen's assumption that T. had been abused, if indeed such an assumption existed, influenced T.'s disclosure.

Nor does the record support [Petitioner]'s assertion that T. was rewarded after disclosing the molestation. Instead, Hansen testified that after T. admitted he had been molested, but declined to talk about it, the next activity was to play with puppets. There is no indication that T. was told that if he said he was molested he could play with the puppets.

This review of the record to clarify [Petitioner]'s assertions, however, misses the point. Assuming [Petitioner]'s arguments raised a question about Hansen's methods, it was for the jury to decide whether her methods led to a false disclosure by T.

On review, we are required to assume the existence of every fact the jury

reasonably could deduce from the evidence at trial. (*People v. Kraft, supra,* 23 Cal.4th at p. 1053.) The jury reasonably could have deduced from Hansen's testimony that T.'s disclosure that he was molested by [Petitioner] was valid and based the verdict on that testimony. This argument necessarily fails.

(See Resp't's Answer, Ex. A.)

### 1. Procedural Default

Like the previous claim, Petitioner did not present this claim to the California Supreme Court in his petition for review on direct appeal, but rather in a petition for writ of habeas corpus. (See Lodged Doc. No. 10.)  Respondent urges the Court to reject the claim as procedurally barred.

In rejecting the petition for writ of habeas corpus, the Supreme Court cited, *inter alia*, In re Lindley, 29 Cal.3d 709 (1947).  In Carter v. Giurbino, 385 F.3d 1194, 1197 (9th Cir.2004), the Ninth Circuit discussed the Lindley procedural bar: "A petitioner who fails to exhaust sufficiency of evidence claims in his direct appeal and raises them instead in a subsequent state habeas petition has procedurally defaulted those claims as a matter of California law."  See also Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir.1986). In Carter, the Ninth Circuit further held that Lindley is an independent and adequate state ground. 385 F.3d at 1198.  In this case, since Petitioner did not raise his insufficiency of evidence claim on direct appeal, but instead presented it in his habeas petition to the California Supreme Court, the California Supreme Court's citation to Lindley procedurally bars this Court from reviewing the claim.

### 2. Analysis of Claim

The claim is also completely without merit.  The law on claims of insufficiency of the evidence is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324 n.16.  On federal habeas review, AEDPA requires an additional layer of deference to the state decision.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005).  This Court

must determine whether the state decision was an unreasonable application of the <u>Jackson</u>

standard.

In this case, the jury found Petitioner guilty in count 4 of lewd and lascivious acts on a

minor under the age of 14.  The jury was instructed as follows:

> The Defendant is accused in all counts of having committed the crime of lewd act
> with a child in violation of section 288, subdivision (a) of the Penal Code.
>
> Every person who willfully commits any lewd or lascivious act upon or with the
> body, or any part or member thereof, of a child under the age of 14 years, with the
> specific intent of arousing, appealing to, or gratifying the lust or passions or sexual
> desires of that person or the child, is guilty of the crime of committing a lewd or
> lascivious act upon the body of a child in violation of Penal Code section 288,
> subdivision (a).
>
> A "lewd or lascivious act" is defined as any touching of the body of a child under
> the age of 14 years with the specific intent to arouse, appeal to, or gratify the sexual
> desires of either party.  To constitute a lewd or lascivious act, it is not necessary that the
> bare skin be touched.  The touching may be through the clothing of the child.
>
> The law does not require as an essential element of the crime that the lust,
> passions or sexual desires of either of such persons be actually aroused, appealed to, or
> gratified.
>
> It is no defense to this charge that a child under the age of 14 years may have
> consented to the alleged lewd or lascivious act.
>
> In order to prove this crime, each of the following elements must be proved:
> 1. A person touched the body of a child;
> 2. The child was under 14 years of age; and
> 3. The touching was done with the specific intent to arouse, appeal to, or gratify
> the lust, passions, or sexual desires of that person or the child.

(CT[2] 1060.)

It is clear from the record that there was ample evidence from which a rational trier of

fact could have found Petitioner guilty of a lewd and lascivious act on victim T.  As noted by the

appellate court, there was testimony presented that Petitioner had touched T.'s penis, that

Petitioner had been seen rubbing his penis against T., and that Petitioner had been seen touching

T.'s penis.  A reviewing court must view the evidence and the inferences to be drawn from it in

the light most favorable to the prosecution and determine whether any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson</u>, 443 U.S. at

[2]"CT" refers to the Clerk's Transcript on Appeal.

319.  In this case, this standard was clearly satisfied.  Petitioner attacks the credibility of the various witnesses; however, the weighing of evidence and the determination of a witness's credibility are roles of the jury, not a reviewing federal court.  See United States v. Tam, 240 F.3d 797, 806 (9th Cir.2001) ("Absent facial incredibility, it is not our role to question the jury's assessment of witness credibility.").  Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence."  28 U.S.C. § 2254(d).  The claim should be rejected.

C. Ineffective Assistance of Counsel

In his third and final claim for relief, Petitioner alleges he received ineffective assistance of counsel due to defense counsel's various failures.  Petitioner contends defense counsel erred by: 1) failing to call Christopher Reid in order to discredit testimony of prior victim C.C.; 2) failing to object to the use of the terms "victim" and "prior victim" before the jury; 3) failing to ask that answers to sustained objections be stricken; 4) failing to argue or object to the limits of character witnesses; and 5) failing to seek exclusion of witness S.

This claim was presented on direct appeal to the Fifth DCA where it was rejected in a reasoned decision.  It was then presented in a petition for review to the California Supreme Court.  The California Supreme Court denied the claim without comment.  When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).  In this case, the appellate court analyzed and rejected the claim as follows:

A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial. (*People v. Lagunas* (1994) 8 Cal .4th 1030, 1036.) [Petitioner] argues he is so entitled.

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.]

"Our review is deferential; we make every effort to avoid the distorting effects of

hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. [Citation.] ... Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or automatically validate challenged acts and omissions. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

"If the record contains an explanation for the challenged aspect of counsel's representation, the reviewing court must determine 'whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate.' [Citation.] On the other hand, if the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation....' [Citation.]" (*People v. Cudjo* (1993) 6 Cal.4th 585, 623.)

We will apply these standards to each of [Petitioner]'s claims of deficient performance by his counsel.

*A. Failure to Call Reid as a Witness*

The trial court denied [Petitioner]'s motion for a new trial based on the theory that Reid's testimony was newly discovered evidence. As explained, Reid was not a newly discovered witness because [Petitioner]'s counsel obtained a copy of the church's investigative report before trial.

[Petitioner] now reframes his argument by asserting that his counsel was ineffective for failing to call Reid as a witness. [Petitioner] is contending that had his counsel called Reid as a witness, the report prepared by Reid for the church could have been admitted into evidence. The jury would have learned from this report that C.C. told the church investigators that [Petitioner] was circumcised and that his penis was white, while in reality [Petitioner] was not circumcised and his penis was dark in color. The jury also would have learned the church investigators concluded there was no basis for bringing charges against [Petitioner].

[Petitioner]'s argument is not supported by the rules of evidence. The report would have been inadmissible hearsay. (Evid.Code, § 1200, subds.(a), (b).) It was an out-of-court statement offered for the truth of the matter asserted. No exception to the rule precluding hearsay appears, and [Petitioner] does not suggest an exception exists. (*Id.,* § 1220 et seq.) Moreover, while Reid may have been permitted to testify as to statements he heard C.C. make (*id.,* §§ 1220, 1235), he would not have been permitted to testify as to the appearance of [Petitioner]'s penis because he lacked personal knowledge of the matter. (*Id.,* § 702, subd. (a).) Reid admitted that two other members of the church's investigating committee examined [Petitioner]. His knowledge was limited to what he was told by those two members, which, of course, is inadmissible hearsay.

Reid's testimony, therefore, was collateral to the issues presented to the jury. [Petitioner]'s counsel's decision not to call Reid as a witness, therefore, was well within the wide range of professional assistance and did not result in [Petitioner] receiving ineffective assistance of counsel.

*B. Failure to Object*

[Petitioner] claims his counsel was ineffective for failing to object at numerous points during the trial. We will discuss the incidents individually.

1        1. Opening statement

2            During his opening statement, the prosecutor began by summarizing the testimony
         of the direct witnesses. He then turned to the anticipated testimony of C.C. and S.R. with
3        the following comments: "The case won't end there. This trial will not end there,
         evidence-wise. We [will] hear from who I am going to label prior victims but,
4        realistically, that is your decision to make. [¶] We are going to hear from two people. One
         is a person named [C.C.], presently 27 years old."

5
            The prosecutor then summarized C.C.'s anticipated testimony without again
6        referring to C.C. as a victim. The prosecutor next turned to S.R.'s anticipated testimony.
         "I told you that there were two prior victims. The other person is named [S.R.]. He is now
7        32 years old."

8            There was not any other reference to either C.C. or S.R. as victims during the
         prosecutor's opening statement. [Petitioner] contends that he received ineffective
9        assistance of counsel because his counsel failed to object to these "victim" references. We
         disagree.

10
            As stated above, to establish that [Petitioner]'s counsel was ineffective, his
11       representation must have fallen outside the bounds of reasonableness and [Petitioner]
         must have suffered prejudice as a result of this deficient representation. [Petitioner] has
12       failed to cite any authority or provide sufficient argument to support either prong.

13           [Petitioner] has not cited any authority for the assertion that the prosecutor's
         statements were objectionable. His comments were not evidence, and the jury was so
14       instructed. Moreover, the prosecutor told the jury that while he referred to C.C. and S.R.
         as victims, it was ultimately the jury's responsibility to decide whether they were victims.
15       We see no basis for [Petitioner] objecting to the prosecutor's opening statement.

16           Also, [Petitioner] cannot establish that had his counsel objected, he would have
         obtained a better result. It is difficult to believe the jury was influenced by these
17       comments. The jury was instructed that the statements were not evidence. There was
         virtually no evidence to contradict the testimony of the witnesses. The only issue was
18       whether the jury found C.C. and S.R. credible. It is inconceivable that an objection during
         opening statement would have changed the jury's resolution of this issue. [Petitioner]'s
19       counsel was not ineffective when he failed to object to these comments.

20       2. Prior conduct evidence

21           [Petitioner] claims his counsel was ineffective for failing to object to the
         admission of the alleged prior acts of molestation from C.C. and S.R. The People sought
22       to introduce this evidence under both Evidence Code sections 1101 and 1108. The trial
         court found the evidence admissible under both code sections.

23
            [Petitioner] cites *People v. Ewoldt* (1994) 7 Cal.4th 380 as authority for the
24       proposition that the evidence should have been excluded. *Ewoldt,* decided before the
         Legislature adopted Evidence Code section 1108, addressed the admission of evidence of
25       prior acts of sexual misconduct pursuant to Evidence Code section 1101.

26           There are several reasons for rejecting [Petitioner]'s argument. First, [Petitioner]'s
         counsel did object to the evidence. He argued the testimony should be excluded under the
27       provisions of both Evidence Code sections 1101 and 1108. The trial court held a hearing
         before trial to hear the proposed testimony. The trial court then heard argument from both
28       counsel on the admissibility of the proposed evidence. [Petitioner] does not explain what

                                            21

more his counsel could, or should, have done in seeking to exclude the evidence. This omission, in essence, is a concession that trial counsel did everything necessary to protect [Petitioner]'s rights.

Second, to the extent [Petitioner] is attempting to argue the trial court erred in admitting the evidence, the failure to discuss Evidence Code section 1108 as a basis for the admission of the testimony requires rejection of the argument. Even if we assume the trial court should not have permitted the evidence pursuant to Evidence Code section 1101, [Petitioner] fails to explain why the evidence should have been excluded pursuant to the provisions of section 1108. We must assume from this omission that [Petitioner] concedes the evidence was admissible pursuant to the terms of this statute.

Finally, if we proceed to the merits of the admissibility of C.C.'s and S.R.'s testimonies pursuant to Evidence Code section 1108, we would find it admissible. Evidence Code section 1108, subdivision (a) permits admission of "evidence of the defendant's commission of another sexual offense" if the defendant is charged with a sexual offense and the trial court concludes the evidence should not be excluded pursuant to policies stated in Evidence Code section 352.

[Petitioner] was accused of committing various sexual offenses as defined in Evidence Code section 1108, subdivision (d)(1)(A), and the testimony of C.C. and S.R. constituted sexual offenses. Therefore, the testimony should have been excluded only if the provisions of Evidence Code section 352 so required.

Evidence Code section 352 provides the trial court with discretion to exclude evidence if the court determines that the probative value of the evidence is substantially outweighed by (1) the probability that its admission will necessitate undue consumption of time, (2) the probability that its admission will create a substantial danger of undue prejudice, (3) the probability that its admission will create a substantial danger of confusing the issues, or (4) the probability that its admission will create a substantial danger of misleading the jury. The trial court has discretion in deciding whether to exclude evidence pursuant to the provisions of Evidence Code section 352. We review for an abuse of discretion. (*People v. Tafoya* (2007) 42 Cal.4th 147, 174.)

In *People v. Harris* (1998) 60 Cal.App.4th 727, 737-741, the appellate court identified five factors that may be used to review the admissibility of proposed Evidence Code section 1108 testimony. We will utilize these factors to analyze this issue.

The first factor is the inflammatory nature of the proposed evidence. Application of this factor requires us to compare the prior crime evidence with the current crimes. In this case, the prior crime evidence essentially was identical to the charged offenses. [Petitioner] points out that C.C.'s testimony hinted that he may have been sodomized, while none of the other witnesses claimed they were sodomized. This testimony was discredited during cross-examination, however, and C.C. never claimed that he was sodomized. This factor, therefore, does not suggest the testimony should have been excluded.

The second factor is the probability that the prior crime evidence would confuse the jury. It is unlikely the jury was confused by C.C.'s and S.R.'s testimonies. The jury was properly instructed, and C.C. and S.R. were adults at the time they testified. No one suggested that [Petitioner] should have been convicted for the crimes he committed against C.C. and S.R. We conclude there was little probability the jury would be confused by the testimony.

The third factor to be considered is the amount of time that has passed between

the prior crimes and the charged crimes. In this sliding scale analysis, the proposed testimony becomes less probative as the amount of time between the events increases. The information charged [Petitioner] with molesting the boys in this case beginning in August 2002. S.R. testified that [Petitioner] molested him beginning in the early 1980's through approximately 1986. C.C. testified that [Petitioner] began molesting him in approximately 1986 and continued until approximately 1988. According to the testimony, therefore, approximately 14 years passed between the prior crime testimony and the current charges. While this factor suggests the prior crime evidence was remote, it was not so remote as to require exclusion in and of itself.

The fourth factor is the consumption of time required by the prior crime testimony. Very little court time was taken up by C.C.'s and S.R.'s testimonies. The complete testimony of both witnesses consisted of approximately 31 pages of the reporter's transcript. This factor clearly does not suggest the testimony should have been excluded.

The final factor identified in *Harris* is the probative value of the evidence. Here, we should consider whether the proposed testimony was material and whether it was cumulative. Again, this factor favors admission of the prior crime evidence. C.C.'s and S.R .'s testimonies were very relevant. [Petitioner]'s defense was, in large part, an attempt to discredit S.S. became confused while testifying, probably because of his age and because English is not his primary language. C.C.'s and S.R.'s testimonies enhanced S.'s credibility because they testified they had similar experiences with [Petitioner]. This is the reason the Legislature changed the law to permit prior sex offense evidence to be admitted.

Each of the factors, with the possible exception of the remoteness factor, favored admission of the testimony. Thus, the trial court did not abuse its discretion in admitting the prior crime evidence. [Petitioner] received a full hearing on the issue and the trial court did not err in its ruling. There was no ineffective assistance of counsel in this area.

3. S.'s testimony

[Petitioner] contends that his counsel should have moved to exclude S.'s testimony because the testimony was not credible. The argument is unsupported by any authority, which is sufficient grounds to reject the argument as abandoned. (*Poway Royal Mobilehome Owners Association v. City of Poway* (2007) 149 Cal.App.4th 1460, 1480.) We also reject the argument, however, because it has no merit.

As discussed above, [Petitioner]'s arguments all attack S.'s credibility. Credibility, however, is to be determined by the jury. (Evid.Code, § 312, subd. (b).) An assertion that a witness lacks credibility is not grounds for excluding the testimony, except, perhaps, in extreme cases. This was not an extreme case, and [Petitioner] has failed to cite any authority for the proposition that had counsel objected to the evidence, it would have been excluded. Counsel is not ineffective for failing to make a meritless objection. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

(See Resp't's Answer, Ex. A.)

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Harrington v. Richter,

*supra*, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787, *citing*, Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 693.  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788, *quoting*, Strickland, 466 U.S. at 687.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788.  Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788, *quoting*, Knowles v. Mirzayance, 556 U.S.

111, 123 (2009).

### 1.  Failure to Call Reid as Witness

Petitioner claims defense counsel should have called Christopher Reid as a witness in order to discredit the testimony of C.C.  However, the appellate court determined that Reid's report was inadmissible hearsay under California law.  Any testimony he could have provided was based on what he was told by other church members; therefore, his testimony would have been inadmissible hearsay as well.  Petitioner contends the appellate court's interpretation of California law regarding hearsay is incorrect, but federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989); see also Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief). Accordingly, counsel cannot be faulted for failing to call Reid as a witness.  In addition, Petitioner suffered no prejudice since the trial court would not have allowed the evidence Petitioner sought to elicit.

### 2.  Failure to Object

Petitioner next alleges defense counsel rendered ineffective assistance by failing to object to the use of the terms "victim" and "prior victim" by the prosecution during his opening statement.  Petitioner submits no Supreme Court authority for the proposition that such reference in opening statement is constitutionally impermissible, and this Court is aware of none.  Rather, the prosecution's statements were not evidence, but argument, and the jury was so instructed.  In fact, the prosecutor himself admitted that while he referred to the individuals as victims, it was ultimately the jury's responsibility to determine whether his assertion was true.  Defense counsel cannot be faulted for failing to object, and there is no question Petitioner suffered no prejudice.

### 3.  Failure to Request Answer be Stricken

Petitioner contends defense counsel should have moved the trial court to strike witness Hansen's response from the record once his objection was sustained.  The appellate court found no prejudice, and this determination cannot be deemed unreasonable.  The statement by Hansen was objectionable, defense counsel entered his objection, and the trial court sustained the

objection.  Regardless of whether counsel requested the answer be stricken, the trial court's act of

sustaining the objection informed the jury that the statement was irrelevant.  Also, the jury was

informed that it must determine the credibility of a witness.  "A jury is presumed to follow its

instructions." Weeks, 528 U.S. at 234.  The state court's conclusion that the outcome would not

have been any different had counsel moved to strike the statement was not unreasonable.

### 4. Failure to Argue or Object to Character Witness Testimony

Petitioner claims counsel failed to argue for permission to call additional character

witnesses.  The appellate court noted that counsel had already called eight witnesses to testify to

Petitioner's character when the prosecutor objected to additional witnesses as cumulative.  The

state court reasonably concluded that defense counsel, by deferring to the trial court's decision,

opted not to pursue additional character witnesses at the risk of alienating the jury.  Petitioner

fails to show that counsel's acceptance of the trial court's decision was not within the wide range

of reasonable professional assistance.  Moreover, Petitioner has not shown any prejudice since it

is clear additional character witnesses would not have altered the outcome.

### 5.  Failure to Seek Exclusion of Witness S.

Finally, Petitioner argues counsel failed to seek the exclusion of the testimony of witness

S, because, he claims, witness S. was not credible.  As noted by the appellate court, the

credibility of a witness is to be determined by the jury.  Only in extreme cases may this role be

taken from the jury.  If a defendant seeks to challenge a witness's credibility, he has numerous

methods available to him, chief among them the right to cross-examine the witness.  A motion to

exclude a complaining witness for a perceived lack of credibility was simply not a viable option.

As counsel is under no duty to raise nonmeritorious arguments, Boac v. Raines, 769 F.2d 1341,

1344 (9th Cir.1985), counsel cannot be faulted for failing to make such a motion.  Also, there is

no likelihood of prejudice.

In sum, the state court rejection of Petitioner's ineffective assistance of counsel claim,

inclusive of all subarguments, was not contrary to, or an unreasonable application of, clearly

established Supreme Court precedent as set forth in Strickland v. Washington, 466 U.S. 668

(1984). See 28 U.S.C. § 2254(d)(1). The claim should be denied.

1

**RECOMMENDATION**

2      Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

3  corpus be DENIED with prejudice.

4      This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii,

5  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

6  and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District

7  of California.

8      Within thirty (30) days after date of service of this Findings and Recommendation, any

9  party may file written objections with the Court and serve a copy on all parties.  Such a document

10  should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

11  to the Objections shall be served and filed within fourteen (14) days after date of service of the

12  Objections.  The Finding and Recommendation will then be submitted to the District Court for

13  review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

14  advised that failure to file objections within the specified time may waive the right to appeal the

15  Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16      IT IS SO ORDERED.

17  **Dated:**   **July 12, 2012**          **/s/ Barbara A. McAuliffe**

18                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28